IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALVIN C. FREDRICKSON,

        Plaintiff,

v.                                        No. 16-cv-01012 KG-CG

CANNON FEDERAL CREDIT UNION,

        Defendant.

## PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS THOMAS A. TARTER

This lawsuit concerns Defendant Cannon Federal Credit Union's ("Cannon FCU") execution of a June 2014 Note, without the signature, consent, or even knowledge of Plaintiff Alvin C. Fredrickson, and its attempts to collect from Mr. Fredrickson on this Note, both by derogatorily reporting the Account on his credit report and other methods.[1] Mr. Fredrickson's expert, Thomas A. Tarter, is eminently qualified to testify about credit union industry standards and credit causation and damages. *See* Docket No. 98-1 filed 6/29/17 (Tarter Expert Report). He can explain to the jury that per these standards, where there is a material change in terms, a co-borrower's signature must be obtained on the new Note, and the failure to do so releases that co-borrower. *See id.* He can explain that banks and credit unions, in recognition of this truth, use a different form, specifically a Note, where there is a material change in terms, rather than a Modification Agreement, which is used when there is no material change. *See id.* Credit

---

[1] The facts are set forth in detail in Plaintiff's Response to Motion for Summary, which is filed at the same time this Brief is filed. Mr. Fredrickson, rather than be repetitive, respectfully requests that the Court to refer to that Brief for a more complete recitation of the facts. *See* Docket No. 102 filed 7/17/17.

1

damages and causation can also be explained by him, which will be helpful to the jury in considering Mr. Fredrickson's emotional distress. *See id.*

## I. Mr. Tarter Is Eminently Qualified

In *Norris v. Baxter Healthcare Corporation*, the Tenth Circuit set forth the standard for admissibility of expert testimony, often referred to as the *Daubert* standard:

> Rule 702 requires the district court to ensure that any and all scientific testimony or evidence is not only relevant, but reliable. This obligation involves a two-part inquiry. A district court must first determine if the expert's proffered testimony has a reliable basis in the knowledge and experience of his or her discipline. In making this determination, the district court must decide whether the reasoning or methodology underlying the testimony is scientifically valid. Second, the district court must further inquire into whether proposed testimony is sufficiently relevant to the task at hand.

397 F.3d 878, 883-84 (10th Cir. 2005) (quotation marks, editorial parenthesis, ellipses, citations and footnote omitted). Stated another way:

> First, the court must determine whether the expert is qualified by "knowledge, skill, experience, training or education" to render an opinion. Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable.

*103 Investors I, L.P. v. Square D Company*, 470 F.3d 985, 990 (10th Cir. 2006) *quoting* FRE 702. In *Kumho Tire Company v. Carmichael*, 526 U.S. 137 (1999), the United States Supreme Court emphasized that a court's inquiry into reliability should be "tied to the facts of a particular case" and that "the relevant reliability concerns may focus upon personal knowledge or experience." *See id.* at 150.

Mr. Tarter is eminently qualified to testify about credit union industry standards and credit causation and damages. He has 50 years' worth of experience working for or with credit unions, starting with Ford Ord Credit Union, where he worked as an *ex officio* board member,

2

during the Vietnam War era. *See* Exhibit A, Tarter Deposition, 6:21-8:20. He has worked with the Credit Union Mutual Insurance Society ("CUMIS"), an insurer for credit unions, analyzing "credit union policies and procedures, lending practices, operations, corporate governance" and other matters. *See id.* at 6:21-7:9. He has acted as an advisor to other credit unions, including Matadors Credit Union. *See id.* at 7:15-16. This experience has made him very familiar with the standards promulgated and enforced by the National Credit Union Association ("NCUA"), the federal regulatory agency that oversees federal credit unions.[2] *See id.* at 49:21-50:24.

Mr. Tarter also has a wealth of experience specific to mortgage loan modifications and novations. He has supervised hundreds of loan modifications, novations or workouts, in such positions as the reorganization expert for the Bank of Saipan, or as a member of the Board of Directors and as Chair of the Audit Committee for First Alliance Mortgage Company ("FAMCO") (the latter position which was approved by the Debtors Committee, the Creditors Committee and the Court in the context of FAMCO's reorganization), or as an advisor to United Mortgage. *See id.* at 10:23-13:4.

Mr. Tarter is also eminently qualified to testify about causation and credit damages. He has testified as an expert at arbitration, deposition, mediation and/or trial in approximately 270

---

[2] NCUA is the federal regulatory agency that oversees credit unions. *See* About NCUA *available at* https://www.ncua.gov/About/Pages/default.aspx. It is undisputed that during the relevant time, Cannon FCU was "under a lot of pressure to make a lot of changes" from NCUA because of Cannon FCU's faulty loan policies. *See* Exhibit B, Watson Deposition, 11:11-15:23. It is also undisputed that during the relevant time Cannon FCU was on probationary status with NCUA which limited its ability to extend or modify mortgage loans to persons – presumably like Mr. Fredrickson's ex-wife – whose credit profile did not meet credit union industry standards for such loans. *See* Exhibit C, Lynch Deposition, 7:21-8:15, 13:6-16:7, 21:9-26:22. Mr. Tarter can explain NCUA examinations, its rating system, and the different levels of probation status under that rating system, and what it meant for Cannon FCU to be under the particular probationary status that it was under. *See e.g.* Exhibit A, Tarter Deposition, 49:21-50:24. Without Mr. Tarter's testimony on these points, the information about NCUA examinations and the probationary status that Cannon FCU was under – and what Cannon FCU could or could not do, because of this status – will be hard, if not impossible, for the jury to decipher.

3

cases. *See* Exhibit D, Tarter Supplemental Report at 2. Although the scope of Mr. Tarter's testimony as to damage quantification has been limited on occasion by courts, her has never not qualified as an expert on credit damage causation. *See id.* He has been qualified as an expert in mortgage lending and credit damage by Arizona, California, Massachusetts, Nevada, New Jersey, Oregon, Pennsylvania, Texas, Utah and West Virginia courts. *See id.* For example, in *Ellis v. Pennsylvania Higher Education Assistance Agency*, No. 07-CV-4498, 2008 U.S. Dist. LEXIS 112150 (C.D.Cal. Oct. 3, 2008), the court found Mr. Tarter qualified to testify as an expert in "credit scoring and credit stigma," noting his experience developing credit scoring models, and specifically finding that his "methodology is reliable." *See id.* at *15-16. He was also qualified as an expert in credit damages in *Nelson v. Equifax Information Services, LLC*, 522 F. Supp. 2d 1222 (C.D. Cal. 2007), with the court noting that his opinions are "the product of reliable principles and methods." *See id.* at 1234, n.7.

Adding to his qualifications, Mr. Tarter has been retained by the Federal Deposit Insurance Corporation ("FDIC"), as a Receiver in mortgage lending matters. *See* Exhibit B, Tarter Supplemental Report at 2. He has been "involved in turndowns in billions of dollars of loans either on a direct basis or as a member of a loan committee." *See* Exhibit A, Tarter Deposition, 135:9-11. And he has been retained in the past by Core Logic, the very same credit reporting agency that generated the denial notice to Mr. Fredrickson concerning Mr. Fredrickson's application for housing. *See id.* at 38:12-39:14. *See also* Exhibit E, Core Logic Adverse Action Letter.

## II. Mr. Tarter Is Not Offering Legal Opinions

The term "novation" has a specific meaning within the credit union world. *See* Exhibit B, Tarter Supplemental Report at 3. A leading banking manual, the Banker's Compliance Manual, which is equally applicable to credit unions, clearly states that if terms change in a material way, the signature of the co-borrower is required. *See* Exhibit A, Tarter Deposition, 17:22-20:23. *See also* Exhibit B, Tarter Supplemental Report at 4. Moreover, the industry differentiates, via the use of different forms, between a change in terms that is material and thus requires the signatures of both co-borrowers, accomplished via a Note, and a change in terms that is not material and thus does not require the signature of both co-borrowers, which is done on a Modification Agreement.3 *See* Exhibit A, Tarter Deposition, 81:1-82:2. *See also* Exhibit B, Tarter Supplemental Report at 4-5. With the June 2014 Note, Cannon FCU did not use the form it uses for loan modifications, but rather used a Note, the form it uses for new loans. *See* Exhibit A, Tarter Deposition, 81:1-82:2. This fact has been confirmed by Cannon FCU's own employees. *See* Exhibit B, Watson Deposition, 47:14-48:6; Exhibit C, Lynch Deposition, 33:6-36:11. *Compare* Docket No. 97-1 filed 6/29/17 *and* Docket No. 97-7 filed 6/29/17 *with* Docket No. 97-3 filed 6/29/17 *and* Docket No. 97-8 filed 6/29/17.

---

3 Cannon FCU feigns ignorance about this differentiation even now. It argues that Mr. Tarter's comparison between the two Notes – the March 2010 Note and the June 2014 Note – is faulty because of a claimed modification that provided that Mr. Fredrickson could make double payments, specifically, $290 biweekly payments as opposed to the $290 monthly payments. *See* Docket No. 98 filed 6/29/17 at 10. *See also* Docket No. 97-1 filed 6/29/17 (March 2010 Note); Docket No. 97-7 filed 6/29/17 (June 2014 Note). However, Mr. Tarter is correct to compare apples to apples, that is, to compare the later Note to the earlier Note. The change from $290 biweekly to $290 monthly was accomplished, per Cannon FCU's own recitation, by a Modification Agreement, not by a Note. *See* Docket No. 98 filed 6/29/17 at 10. *See also* Docket No. 97-3 filed 6/29/17 (December 2010 Document). Moreover, as pointed out in detail in other briefing, the circumstances concerning the purported change to the $290 biweekly payment term are in dispute, with Cannon FCU's own internal documents rendering Cannon FCU's current arguments highly suspect. *See* Docket No. 102 filed 7/17/17 at § II(B).

It would be helpful for the jury to hear from Mr. Tarter about these industry standards regarding novation, the correct use of a Note and the correct use of a Modification Agreement. His testimony is needed on these interlocking issues because Cannon FCU's employees have attempted to explain away their election to use a Note with the June 2014 Note. *See* Exhibit B, Watson Deposition, 47:14-49:2. Mr. Tarter can explain how the use of a Note where the change in terms is material is consistent with industry standards and the failure to obtain the co-borrower's signature on such a Note is inconsistent with industry standards. *See* Exhibit B, Tarter Supplemental Report at 4-5. Mr. Tarter can further explain, as he has done in his Report and in his testimony, that the industry would recognize the failure to obtain Mr. Fredrickson's signature on the June 2014 Note as a novation, relieving him from the obligation. *See* Docket No. 98-1 filed 6/29/17 (Tarter Expert Report); Exhibit A, Tarter Deposition, 44:16-45:25, 57:16-60:3. *See also* Exhibit B, Tarter Supplemental Report at 4-5. Without such testimony, Cannon FCU's employees – who are credit union employees and thus will be seen as *de facto* experts by the jury – will be allowed to misrepresent industry standards and to misrepresent the import of a Note versus a Modification Agreement.[4]

Mr. Tarter has gone out of his way to make clear that although "novation" may be a legal term with defined elements, when he uses the term, he is speaking as to its meaning in the credit union industry. *See* Docket No. 98-1 filed 6/29/17 (Tarter Expert Report); Exhibit A, Tarter Deposition, 6:21-7:9, 57:16-60:3. *See also* Exhibit B, Tarter Supplemental Report at 3. Although Cannon FCU's legal counsel, through artful questioning, attempted to cast the opinions

---

[4] Cannon FCU argues that Mr. Tarter should not be allowed to express his opinions that flow from his credit union experience because these opinions are legally incorrect. *See* Docket No. 98 filed 6/29/17 at 8. Not true, as demonstrated by recent briefing. *See* Docket No. 102 filed 7/17/17 at 20-22.

of Mr. Tarter as legal opinions, Mr. Tarter will not be providing any legal opinions to the jury. To the extent that there is any legitimate possibility of jury confusion, such confusion can be remedied via a jury instruction.

### III. Mr. Tarter's Testimony on Credit Damages and Causation Is Reliable and Will Help the Jury

Cannon FCU's attack on Mr. Tarter's opinions concerning credit damages and causation betrays Cannon FCU's misunderstanding as to the damages that Mr. Fredrickson is seeking and as to the law concerning these damages.

Mr. Fredrickson is seeking compensation only for emotional distress. He is not seeking economic damages for the credit denials that happened due to Cannon FCU's inaccurate reporting. He is not seeking economic damages for these denials because they happened before Mr. Fredrickson's formal disputes to the credit reporting agencies, and thus are not compensable under the Fair Credit Reporting Act, and because such economic damages cannot be reliably quantified. *See* Exhibit B, Tarter Supplemental Report at 3-4. The fact that Mr. Tarter will not quantify these damages does not demonstrate some defect in his expertise. Rather, his refusal to quantify under the present facts is in recognition of the inherent reality and is consistent with the applicable law. *See Ellis*, 2008 U.S. Dist. LEXIS 112150 at *17 (disallowing only the ***quantification*** of emotional distress damages: "Tarter may not opine as to Ellis' damages for sleeplessness or on the ***calculation*** of other emotional damages") (emphasis added).

As Mr. Tarter repeatedly explained at his deposition, the emotional distress will need to be proven up by Mr. Fredrickson's testimony at trial. *See e.g.* Exhibit A, Tarter Deposition, 120:3-17, 133:13-21, 135:25-136:18. This way of doing things is consistent with Tenth Circuit law. *See Llewellen v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1183 (10th Cir. 2013) (a plaintiff

7

is "not required to produce evidence to corroborate his detailed and specific testimony [of emotional distress damages] in order to survive summary judgment . . . provided that [the plaintiff] reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements"). At Mr. Fredrickson's deposition, he testified about the emotional distress he suffered because of Cannon FCU's post-June 2014 reporting, including his "inability to sleep [and his] loss of appetite," that he "worried a lot about what was going to become of it, what could I do to make things right," that he was "[b]eing portrayed as a deadbeat, when that's so contrary to my dignity and respect and honor" imbued in him due to his military background, of his "inability to purchase a home because of the outstanding mortgage keeping me from having a house again," and regarding his "loss of weight." *See* Exhibit F, Fredrickson Deposition, 85:1-19, 86:13-18, 89:11-18, 91:10-20.

Mr. Tarter's testimony will help the jury fairly consider Mr. Fredrickson's emotional distress, as testified to by Mr. Fredrickson, in two ways. Mr. Tarter can explain that Cannon FCU's post-June 2014 reporting of the Account was a substantial causal factor with the credit denials by Access Community Credit Union ("Access CCU"), Core Logic and USAA. *See* Exhibit A, Tarter Deposition, 98:21-102:1, 134:5-135:15. Although no economic damages are being sought for these denials – which will be made clear to the jury, including through a jury instruction, if Cannon FCU so desires – the fact that Cannon FCU's inaccuracy was so damaging that it was a substantial factor in these denials is a relevant factor the jury can consider with the later emotional distress.

Cannon CFU also faults Mr. Tarter for not being willing to say that the denials were caused solely by Cannon CFU's derogatory credit reporting. Cannon FCU misunderstands the

law. In recognition that many people have some negative entries, often relatively minor, on their credit reports, the applicable case law recognizes that Cannon FCU's post-June 2014 reporting is not required to be the only factor for denial. *See e.g. Philbin v. Trans Union Corporation*, 101 F.3d 957, 968 (3d Cir. 1996) ("We deem it sufficient that, as with most other tort actions, a FCRA plaintiff produce evidence from which a reasonable trier of fact could infer that the inaccurate entry was a 'substantial factor' that brought about the denial of credit.") (citation omitted). Rather, it need only be a substantial factor, which is precisely the opinion given by Mr. Tarter. *See* Exhibit A, Tarter Deposition, 98:21-102:1, 134:5-135:15. *See also Tilley v. Global Payments, Inc.*, 603 F. Supp. 2d 1314, 1326 (D. Kan. 2009) (denying summary judgment, reasoning that "[a]lthough plaintiff admits she had made late credit payments and she had credit card debt of approximately $ 33,000, the court finds she need not eliminate the possibility that other factors, including correct adverse entries, also entered into the decision").

This misunderstanding of the law concerning the "substantial factor" standard for credit denial also informs Cannon FCU's wrongheaded argument that Mr. Tarter's opinion on credit damage causation is not reliable because there were other negative entries on Mr. Fredrickson's credit report. Mr. Tarter considered the other adverse entries on Mr. Fredrickson's credit reports that were reported during the relevant time – none of which concern a mortgage – but nevertheless opined that Cannon FCU's reporting that Mr. Fredrickson was personally liable under the terms of the June 2014 Note, or the subsequent December 2015 Modification of this Note, was a substantial causal factor with the credit denials by Access CCU, Core Logic and USAA. *See* Exhibit A, Tarter Deposition, 98:21-102:1, 134:5-135:15. This opinion is based on Mr. Tarter's extensive experience specific to loan approvals and denials, as recited above,

where Mr. Tarter was personally involved in deciding who would be approved or denied based on the given person's credit history, and on his experience formulating credit scoring models, to be used in decisioning loan applications. Mr. Tarter's opinion on credit causation in this lawsuit is also strongly supported by the internal documents from the creditors themselves, which will also be presented to the jury. For example, with the July 2014 credit denial by Access CCU, Mr. Fredrickson was denied a $3,000 loan, based on Cannon FCU's reporting, with Access CCU specifically noting that it "advised [Mr. Fredrickson that he] needs to be current on house for at least 12 months before we can take a look at doing anything." *See* Exhibit G, Access CCU Documents and Affidavit.

The second way in which Mr. Tarter's expertise will aid the jury in considering Mr. Fredrickson's emotional distress centers on Mr. Tarter's extensive experience with persons in tough credit situations. As noted above, Mr. Tarter gained this experience through years of work as a credit damages expert – for consumer plaintiffs, for lenders and for credit reporting agencies such as Core Logic – but also as someone who has been appointed by courts to deal with portfolios of troubled assets, including helping out consumers within the portfolios who needed modifications or refinances. His testimony in this regard is also informed by treatises in the field, such as "Credit Scores & Credit Reports" by Evan Hendricks. *See* Exhibit A, Tarter Deposition, 35:2-8, 130:10-23. He will explain to the jury that consumers caught in the same situation as that experienced by Mr. Fredrickson – inability or difficulty obtaining credit because of bad credit, perhaps bad credit entries that should not be there – often display difficulty sleeping, emotional upset and other manifestations that Mr. Fredrickson experienced. *See*

Docket No. 98-1 filed 6/29/17 (Tarter Expert Report). *See also* Exhibit B, Tarter Supplemental Report at 3-4.

### IV. Conclusion

Mr. Fredrickson requests that the Court deny Cannon FCU's Motion to Exclude Testimony of Plaintiff's Expert Witness Thomas A. Tarter.

Respectfully submitted,

TREINEN LAW OFFICE PC, Attorneys for Plaintiff

_____
ROB TREINEN
500 Tijeras Ave NW
Albuquerque, New Mexico 87102
(505) 247-1980
(505) 843-7129 (fax)
robtreinen@treinenlawoffice.com


I certify that I served by email the foregoing pleading to Dennis E. Jontz, Bobbie Jo Collins, Ryan M. Walters and Justin J. Henderson, attorneys for Defendant Cannon Federal Credit Union, at djontz@lrrc.com, bcollins@lrrc.com, rwalters@lrrc.com and jhenderson@lrrc.com, on July 17, 2017.

_____
ROB TREINEN

11