IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALVIN C. FREDRICKSON,

      Plaintiff,

vs.                                                       No. CV 16-01012 RB-CG

CANNON FEDERAL CREDIT UNION,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

A good reputation is worth more than silver or gold. In today's world, a good reputation for creditworthiness can mean the difference between being employed and searching for work, between feeling secure and enduring anxiety, and between owning a home and not.

Recognizing the importance of one's credit reputation, Congress enacted the Fair Credit Reporting Act (FCRA) to regulate credit reporting. Like common law principles of defamation, the FCRA empowers individuals to vindicate their credit reputations by suing those who make false allegations against them. Like common law principles of defamation, however, truth is always a defense against FCRA claims.

**BACKGROUND**

In March 2010, Alvin Fredrickson and his wife, Donna Fredrickson, refinanced the mortgage on their home with Cannon Federal Credit Union (Cannon). (Doc. 1 at 3.) In refinancing their home mortgage, Mr. and Mrs. Fredrickson both signed a note dated March 22, 2010 (Original Note). (*Id.*) According to the terms of the Original Note, the Fredricksons agreed

to pay $290 monthly,[1] with a final "balloon" payment of $11,255.26 in March of 2022. (Doc. 97, Ex. A.) The annual interest rate was seven percent, the principal was $59,556.07, and the total payment would be $86,365.26. (*Id.*)

The Original Note stated that "modification of amortization of the sums secured by this Mortgage . . . shall not operate to release, in any manner, the liability of the original borrower . . . ." (Doc. 97, Ex. B.) The Original Note also stated:

> Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage . . . .

(*Id.*)

Mr. and Mrs. Fredrickson later divorced, and in 2014, Ms. Fredrickson renegotiated the mortgage with Cannon. (Doc. 1 at 4.) The terms of the new agreement were memorialized in the "2014 Note." (*Id.*) The 2014 Note required weekly payments of $100 instead of regular payments of $290, and a balloon payment of $39,986.97 in March of 2020 instead of an $11,255.26 payment in March of 2022. (*Id.*) The collateral, interest rate, and principal balance remained unchanged. (*See* Doc. 109 at 9.) The 2014 Note contained the same contractual provisions as the Original Note regarding modification of amortization and borrowers who do not execute the note. (*See* Doc. 1 at 4–5.) Although Mr. Fredrickson was listed as a borrower on the 2014 Note, he was not involved with the negotiation of the 2014 Note, did not sign it, and was not notified of the modification. (*Id.* at 4–5; Doc. 102 at 16 n.10.)

In 2015, Ms. Fredrickson and Cannon modified the 2014 Note, again "without Mr. Fredrickson's knowledge, consent or signature." (Doc. 102 at 6.) The 2015 modification (2015

---

[1] Mr. Fredrickson suggested that, despite the terms of the Original Note, the Fredricksons had actually agreed to pay $290 *biweekly* instead of monthly. (*See* Doc. 102 at 13.)

Note) lowered the interest rate from seven percent to 3.25 percent and changed the payments from $100 a week to $400 a month. (*Id.* at 6–7.)

In 2016, Mr. Fredrickson learned that credit reporting agencies (CRAs) Equifax, Experian, and TransUnion were reporting that he was obligated to pay on the 2015 Note with Cannon. (*See id.* at 6; Doc. 1 at 6.) Mr. Fredrickson believed that, because he was not consulted when Ms. Fredrickson modified the Original Note, he was released from his obligations when the 2014 Note was created. (*See* Doc. 1 at 6–7.) Concerned about his financial reputation, Mr. Fredrickson sent a dispute letter to each of the three CRAs, explaining that he had not signed the 2014 Note, so he should be released from the 2014 Note and any subsequent note. (*See id.* at 7.) With his letter to each CRA, Mr. Fredrickson attached a copy of the 2014 Note, highlighting a section that read, "If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note." (*Id.*) The CRAs, in turn, asked Cannon to investigate the debt. (*Id.*)

A Cannon employee, Erin Watson, investigated Mr. Fredrickson's disputed debt. (Doc. 97 at 6.) Ms. Watson reviewed the loan documents and loan history. (*Id.*) She consulted with the vice president of lending and Cannon's CEO, as well as Cannon's attorney. (*Id.* at 6–7.) In consulting Cannon's attorney, Ms. Watson sent an email to the attorney's office summarizing the dispute and detailing the timeline of Mr. Fredrickson's loan history. (*Id.*, Ex. K.) In her email, Ms. Watson also attached various relevant documents, including Mr. Fredrickson's dispute letter, loan documents over the years, and a part of Mr. Fredrickson's divorce decree. (*Id.*) Cannon's attorney informed Cannon that it was correctly reporting Mr. Fredrickson's debt. (*See id.* at 30:4–33:2.) At the conclusion of its investigation, Cannon concluded that it was correctly

reporting Mr. Fredrickson's liability, and Cannon did not change its reports to CRAs. (*See* Doc. 1 at 7–8.)

Convinced that his credit reputation was being unjustly maligned, Mr. Fredrickson brought suit against Cannon under the Fair Credit Reporting Act (FCRA), as well as various state law theories. (*Id.* at 9–11.) Cannon moved for summary judgment on Mr. Fredrickson's claims.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a summary judgment motion, the Court views "the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *See Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017) (citation omitted).

## DISCUSSION

*I. Jurisdiction.*

Cannon claims that Mr. Fredrickson has no Article III standing to sue. (Doc. 97 at 23.) Article III of the U.S. Constitution requires a plaintiff to have suffered a concrete and particularized "injury in fact" before bringing suit. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016). Cannon believes that Mr. Fredrickson's alleged injuries are too nebulous because Mr. Fredrickson has refused to quantify his emotional damages. (*See* Doc. 97 at 23–24.)

A plaintiff asserting emotional damages may survive a motion for summary judgment even without providing corroborating evidence, as long as the plaintiff "reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere

conclusory statements." *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1183 (10th Cir. 2013) (citation omitted). In *Llewellyn*, the plaintiff alleged in his affidavit that discovering the defendant's negative reports about his creditworthiness caused him to experience emotional distress, which manifested in "drenching night sweats, panic attacks," "great stress and anxiety," and the feeling that he "could not recover." *Id.* at 1182–83, 1183 n.3. The *Llewellyn* Court ruled that the plaintiff's alleged emotional damages survived summary judgment because, "viewing Plaintiff's affidavit in the light most favorable to him and drawing all reasonable inferences in his favor," the plaintiff's claims were "not so incredible or conclusory" that they could be ignored. *Id.* at 1182–83.

In this case, Mr. Fredrickson explained that he takes pride in his identity as an Air Force veteran because Air Force veterans are held in high esteem and are characterized by excellence. (*See* Doc. 102, Ex. J, at 86:13–18.) Mr. Fredrickson goes on to say that Cannon's reports "portrayed [him] as a deadbeat . . . contrary to [his] dignity and respect and honor." (*Id.* at 85:17–19.) Mr. Fredrickson worried about the effect of Cannon's report on his reputation, and this concern caused Mr. Fredrickson to experience anxiety, difficulty sleeping, and loss of appetite. (*Id.* at 85:12–16.) Mr. Fredrickson's description of his symptoms is comparable in detail with the *Llewellyn* plaintiff's description of his symptoms, and Mr. Fredrickson's assertion that Cannon's reporting caused those symptoms is not so incredible or conclusory that it can be ignored. Viewing Mr. Fredrickson's claims in the light most favorable to him and drawing all reasonable inferences in his favor, the Court finds that Mr. Fredrickson has alleged his emotional injury with sufficient detail to establish a concrete and particularized injury-in-fact for purposes of summary judgment.

As Mr. Fredrickson has alleged a cognizable injury-in-fact, he has Article III standing to bring suit. The Court has federal-question jurisdiction over his FCRA claim, 28 U.S.C. § 1331, and the Court has supplemental jurisdiction over his state law claims, which arise from the same core facts as his FCRA claim, 28 U.S.C. § 1367(a).

## II. The FCRA and Furnishers of Information.

Congress "enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA regulates many entities in the credit industry, including "furnishers" who provide financial and credit information to CRAs. *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010); 15 U.S.C. § 1681s–2.

Furnishers are governed in part by § 1681s–2(b) of the FCRA. Section 1681s–2(b) applies when a consumer disputes information in a credit report to a CRA, and the CRA asks the furnisher of that disputed information to check the accuracy and completeness of its report. *See Llewellyn*, 711 F.3d at 1178. In that situation, § 1681s–2(b) requires the furnisher to:

> (1) Investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is complete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.

*Id.* at 1178; 15 U.S.C. § 1681s–2(b). If a furnisher fails to perform any of its § 1681s–2(b) duties, the consumer can sue the furnisher. *Fishback v. HSBC Retail Servs. Inc.*, 944 F. Supp. 2d 1098, 1107 (D.N.M. 2013) ("A consumer can bring a private cause of action against the furnisher for violations of § 1681s–2(b).").

In this case, Cannon is the furnisher of information regarding the 2015 Note to the CRAs. Mr. Fredrickson states that he disputed the Cannon debt to three CRAs, and the CRAs informed

6

Cannon of the dispute. This triggered the § 1681s–2(b) duties for Cannon, duties that Mr. Fredrickson says Cannon breached.

### *III. The Reasonableness of Cannon's Investigation.*

Mr. Fredrickson complains that Cannon breached its § 1681s–2(b) duties by failing to consider all relevant documents related to his dispute and by failing to conduct a genuine, reasonable investigation. (Doc. 1 at 9.) Because a reasonable investigation involves considering documents that should be considered, Mr. Fredrickson's complaint can be summed up as an allegation that Cannon failed to reasonably investigate his dispute.

Whether an investigation is "reasonable" depends on an objective standard: "what a reasonably prudent [furnisher] would undertake under the circumstances." *See Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016) (citations omitted). What investigation a reasonably prudent furnisher would undertake depends on what relevant information was provided by the CRA giving notice of the dispute. *Id.* (citation omitted). "An investigation does not have to be exhaustive to be reasonable; an information furnisher may balance the costs and benefits of engaging in additional procedures." *Id.* at 1276. Although the question of whether a furnisher's investigation was reasonable may be a question for trial, "summary judgment is proper if the reasonableness of the [furnisher's] procedures is beyond question." *See id.* at 1275.

As described above, Ms. Watson, a Cannon employee, investigated Mr. Fredrickson's debt as a result of the CRA's notice of the dispute. Ms. Watson reviewed Mr. Fredrickson's loan documents and loan history. She consulted with the vice president of lending and Cannon's CEO. She also consulted Cannon's attorney. In consulting Cannon's attorney, Ms. Watson sent the attorney's office a summary of the dispute, a detailed timeline of Mr. Fredrickson's loan history, as well as various other relevant documents, including Mr. Fredrickson's dispute letter,

loan documents over the years, and a part of Mr. Fredrickson's divorce decree.[2] Cannon's attorney informed Cannon that it was correctly reporting Mr. Fredrickson's debt. Relying on its investigation and the advice of its attorney, Cannon concluded that it was correctly reporting Mr. Fredrickson's liability.

Cannon certainly considered more documents than were provided by the CRA giving notice of the dispute. But Mr. Fredrickson claims that there is no credible evidence that Cannon's attorney advised Cannon about the dispute. (Doc. 102 at 15.) Mr. Fredrickson is incorrect. Ms. Watson testified at her deposition that Cannon's attorney advised her over the phone that Cannon was correctly reporting Mr. Fredrickson's debt. The evidence is undisputed that Ms. Watson sent an email to her attorney detailing Mr. Fredrickson's case and asking for advice.

To validly contest Cannon's evidence regarding its consultation with its attorney, Mr. Fredrickson must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). In other words, Mr. Fredrickson cannot simply put an issue in dispute by saying it is not so; rather, Mr. Fredrickson must "come forward with facts supported by competent evidence." *See Nahno-Lopez*, 625 F.3d at 1283 (citation omitted). Cannon had waived its attorney-client privilege with regard to the lawyer it consulted for the dispute, so Mr. Fredrickson was free to ask the lawyer whether he advised Cannon on the case. Mr. Fredrickson did not do so. Instead, Mr. Fredrickson baldly suggests that Cannon's attorney ignored Cannon. This suggestion—that Cannon's attorney just blew Cannon off, and that Ms. Watson lied under oath—is wholly unsubstantiated. The Court finds that Cannon relied on the advice of its attorney in concluding that it had correctly reported Mr. Fredrickson's debt.

---

[2] All of this information was sent to Cannon's attorney's office via email. The email (including attachments) is not barred by the hearsay rule because it is used to show Cannon's efforts to consult its attorney, not the truth of its contents.

Because Cannon considered documents that the CRA presented to it—and more, and because Cannon consulted its attorney on the issue, there is no question that Cannon's investigation was consistent with what a reasonably prudent furnisher would have done under the circumstances. Accordingly, Cannon's investigation was reasonable as a matter of law.

*IV. The Accuracy and Completeness of Cannon's Report.*

Though Cannon's investigation was reasonable, Cannon could still breach its statutory duties by failing to accurately or completely report the information that it did know—which is exactly what Mr. Fredrickson alleges.

Furnishers *can* breach their § 1681s–2(b) duties if they fail to report the *existence* of a dispute because such an omission may create a misimpression about the consumer's creditworthiness. *See Llewellyn*, 711 F.3d at 1186–87 (emphasis added). However, § 1681s–2(b) does not require a furnisher to report *every* dispute to CRAs, only disputes that actually have merit. *See Sartori v. Susan C. Little & Assocs., P.A.*, 571 F. App'x 677, 682 (10th Cir. 2014) ("Although some courts have held that a furnisher of information violates § 1681s–2(b) if it fails to identify that a consumer disputes the information, the dispute must be 'bona fide,' i.e., one 'that could materially alter how the reported debt is understood.' ") (quoting *Gorman v. Wolpoff & Ambramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (internal citation omitted)). Thus, a jury cannot properly find that a furnisher violated § 1681s–2(b) by not reporting a dispute if the dispute is meritless as a matter of law.

**The merits of Mr. Fredrickson's dispute.**

A party to a note may be discharged from his obligation if there is a material modification to the note without his consent. *See Sunwest Bank of Albuquerque v. Roderiguez*, 770 P.2d 533, 534 (N.M. 1989). The story in *Sunwest* is strikingly similar to Mr. Fredrickson's story: Patsy

9

Roderiguez (Patsy) and her husband, Albert Roderiguez (Albert), jointly executed a promissory note for a $24,718.53 loan with Sunwest Bank. *Id.* at 534. The note required Patsy and Albert to make three payments of $2,000, with a balloon payment of $18,718.53. *Id.* Later, Albert and Sunwest Bank modified the original note, eliminating the three $2,000 payments and making the entire debt due on the maturity date. *Id.* at 534–35. Patsy, who had separated from Albert, did not sign the loan modification. *See id.* at 537. In fact, Patsy alleged that she did not even know about the loan modification because Sunwest Bank intentionally or negligently did not inform her that there had been a modification. *See id.*

Sunwest Bank tried to hold Patsy to the modified loan agreement, and Patsy resisted. In resolving the dispute, the New Mexico Supreme Court pointed out that the modified loan only made immaterial changes: it changed the schedule of payment but did not add additional collateral, raise the interest rate, or increase the principal balance. *Id.* The *Sunwest* Court also observed that the original note Patsy had signed contained language of consent to future modifications. *Id.* Based on these observations, the New Mexico Supreme Court held that Patsy was bound by the terms of the modified loan. *See id.* at 537–38.

Turning to the 2014 Note in Mr. Fredrickson's case, the 2014 Note changed the schedule of payment (requiring weekly payments of $100 instead of regular payments of $290); but the collateral, interest rate, and principal balance all remained the same. Thus, under New Mexico law, the changes in the 2014 Note were immaterial. Additionally, the Original Note, which Mr. Fredrickson did sign, contained language of consent to future modifications: "modification of

amortization[3] of the sums secured by this Mortgage . . . shall not operate to release, in any manner, the liability of the original borrower . . . ." (Doc. 97, Ex. B.)

On these facts, *Sunwest* controls. It does not matter that Mr. Fredrickson did not sign the 2014 Note, nor does it matter that Mr. Fredrickson was not informed about the modification. It also does not matter whether Ms. Watson thinks the changes were material or not. As a matter of law, Mr. Fredrickson was bound by the 2014 Note because his prior consent binds him to immaterial modifications to his original obligation. *See Sunwest*, 770 P.2d at 537–38.

As for the 2015 Note, the 2015 Note merely changed the scheduled payments from $100 a week to $400 a month. Since there are roughly four weeks in a month, the monthly payment under both the 2014 and 2015 Notes remained virtually unchanged. Additionally, the 2015 Note actually *reduced* the interest rate from seven percent to 3.25 percent. To the extent that the different interest rate caused a material change, such a change does not absolve a debtor from his obligation if it adds no additional burden on the debtor. *See First Nat. Bank in Albuquerque v. Abraham*, 639 P.2d 575, 578 (N.M. 1982) (releasing debtor when increased interest rate added "new indebtedness"). Because the installment payments remained largely the same, because the 2014 Note also contained the consent to modification language, and because the only material change was to *reduce* the interest rate, Mr. Fredrickson is bound by the 2015 Note.

Having found that Mr. Fredrickson was bound by the 2014 and 2015 Notes based on the terms of those Notes and the language of consent to modification in the Original and 2014 Notes, the Court considers Mr. Fredrickson's alternative arguments for releasing him from his contractual duties.

---

[3] "An amortization plan" is "one where there are partial payments of the principal and accrued interest, at stated periods for a definite time, at the expiration of which the entire indebtedness will be extinguished." *See Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.*, 513 U.S. 414, 426–27 (1995).

### a. *Novation Argument*

Mr. Fredrickson informs the Court that his proposed expert, Thomas Tarter, opines that the 2014 Note should be understood as a novation instead of a modification. (Doc. 102 at 4.) The Court is not persuaded. "In order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well-settled principle that novation is never to be presumed." *Sims v. Craig*, 627 P.2d 875, 877 (N.M. 1981). Mr. Fredrickson was a party to the Original Note, so his consent was necessary for any subsequent novation. But Mr. Fredrickson did not consent to a novation because, as he said himself, he was not involved in the creation of the 2014 Note. Additionally, Mr. Fredrickson has offered no proof that Cannon intended the 2014 Note to be a novation that released Mr. Fredrickson. The 2014 Note was not a novation, and, for the same reasons, the 2015 Note was not a novation.

### b. *Contractual Provision Argument*

Mr. Fredrickson also argues that, because he did not sign the 2014 Note, the following language from the 2014 Note shields him from personal liability:

> Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage . . . .

(*See* Doc. 102 at 11–12.) That language refers to borrowers who, in the first instance, refuse to be personally liable on the debt and agree only to provide collateral for the loan. That language does not cover Mr. Fredrickson, who, by signing the Original Note, agreed to be personally liable on the loan in the first instance.

### c. *Breach of Contract Claim*

Mr. Fredrickson claims that Cannon breached the terms of the Original Note by changing

material terms of the Original Note "without Mr. Fredrickson's knowledge, consent or agreement . . . ." (Doc. 1 at 10.) As explained above, the 2014 Note did not materially alter the Original Note. Thus, Cannon did not breach the contract.

Additionally, an element of a breach of contract claim is that the plaintiff needs to have complied with the terms of the contract. *See Archuleta v. City of Roswell*, 898 F. Supp. 2d 1240, 1258 (D.N.M. 2012) (citing *McCasland v. Prather*, 585 P.2d 336, 338 (N.M. Ct. App. 1978)). Mr. Fredrickson had fallen behind on the Original Note, so he was not complying with the Original Note and cannot sue for breach of contract.

Assuming without deciding that the breach of contract claim is not preempted by the FCRA, the Court finds that summary judgment against Mr. Fredrickson on his breach of contract claim is appropriate.

d.  *Breach of the Covenant of Good Faith and Fair Dealing Claim*

Mr. Fredrickson also accuses Cannon of breaching the covenant of good faith and fair dealing by "knowingly and intentionally [taking] actions that prevented Mr. Fredrickson from realizing the benefits of the contract . . . ." (Doc. 1 at 10.)

"New Mexico courts have held that every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract." *Sanders v. FedEx Ground Package Sys., Inc.*, 188 P.3d 1200, 1203 (N.M. 2008) (citation omitted). To prove a breach of the covenant of good faith and fair dealing, the plaintiff must prove that the defendant acted in bad faith to "prevent the contract's performance or to withhold its benefits from the other party." *Id.* (citations omitted).

Cannon presumably wants to be paid back for the money it loaned to the Fredricksons. Ms. Fredrickson was behind on her payments, and the 2014 and 2015 modifications were

13

designed to help Ms. Fredrickson fulfill her contractual obligations—pay Cannon back—not to make it harder. Assuming without deciding that the covenant of good faith and fair dealing argument is not preempted by the FCRA, the Court finds that summary judgment against Mr. Fredrickson is appropriate for this claim.

Cannon's investigation into Mr. Fredrickson's debt was reasonable. Since neither the 2014 Note nor the 2015 Note released Mr. Fredrickson from the Cannon debt, his dispute is meritless, and Cannon could have complied with § 1681s–2(b) even without reporting Mr. Fredrickson's dispute to the CRAs. If Cannon did not have to report even the *existence* of Mr. Fredrickson's meritless dispute to the CRAs under § 1681s–2(b), then, contrary to Mr. Fredrickson's belief, Cannon certainly did not have to report *details* of the dispute. (*See* Doc. 102 at 20.) Cannon's reporting was accurate and complete.

Cannon did not breach any of its § 1681s–2(b) duties, so summary judgment against Mr. Fredrickson on his § 1681s–2(b) claim is appropriate.

*V. State Law Claim.*

Having determined that the Court should grant summary judgment against Mr. Fredrickson on the § 1681s–2(b), breach of contract, and breach of the covenant of good faith and fair dealing claims, all that remains is Mr. Fredrickson's state law claim for tortious debt collection. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998). In keeping with the principles of comity and to avoid needlessly opining on state law, the Court dismisses Mr. Fredrickson's tortious debt collection claim. 28 U.S.C. § 1367(c). If allowed under New Mexico law, Mr. Fredrickson may bring his tortious debt collection claim in state court.

## CONCLUSION

For the reasons provided, the Court **grants summary judgment against** Mr. Fredrickson on his FCRA, breach of contract, and breach of the covenant of good faith and fair dealing claims. The Court **dismisses** Mr. Fredrickson's tortious debt collection claim without prejudice.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**